**Ted KOZERA, et al., Plaintiffs,**

**v.**

**WESTCHESTER FAIRFIELD CHAPTER OF NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC., LOCAL 501, et al., Defendants.**

**No. 87 Civ. 5540 (JES).**

United States District Court,
S.D. New York.

May 30, 1989.

Hall & Sloan, New York City (Burton Hall, of counsel), for plaintiffs.

Law Offices of Ralph P. Katz, White Plains, N.Y. (Ralph P. Katz, of counsel), for Local Union 501, IBEW.

Twining, Nemia, Hill & Steflik, Binghamton, N.Y. (Joseph J. Steflik, Jr., of counsel), for Westchester–Fairfield Chapter of Nat. Elec. Contractors Assoc., Inc.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs, six members of Local 501 of the International Brotherhood of Electrical Workers ("Local 501"), bring this action against the Westchester–Fairfield Chapter of the National Electrical Contractors Association, Inc. ("the Chapter"), Local 501 and the president, Donald Werle, and treasurer, Douglas Reid, of Local 501.

In general, plaintiffs allege that the Chapter breached the collective bargaining agreement entered into between its members and the members of Local 501. Plaintiffs also allege that Local 501 breached its duty of fair representation by entering into certain ancillary agreements without membership approval. To remedy these alleged wrongs plaintiffs seek a declaration that certain side agreements described below are void and seek damages from both Local 501 and the Chapter.

The case was tried to the Court. Thus, the following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## BACKGROUND

Local 501 is an affiliate of the International Brotherhood of Electrical Workers ("IBEW") and represents its members, including plaintiffs, in collective bargaining with the Chapter, an affiliate of the National Electrical Contractors' Association ("NECA"), whose membership is made up of individual electrical contractors.

Local 501 had previously negotiated several collective bargaining agreements covering inside wiremen, known as "inside wiremen's agreements." Local 501 had always required a vote of the members ratifying such agreements before they could be put into effect. In June of 1986 the latest of these agreements was due to expire and the parties, the Chapter and Local 501, entered into negotiations to reach a new agreement. *See* Proposed Pre–Trial Order ("PTO") at ¶ 5(6).[1] Under threat of a strike, an agreement was reached on June 13, 1986 and was ratified by the membership of Local 501 on June 19, 1986, but was not signed by the Chapter.

This agreement (the "main agreement") also indicated that the parties would seek to negotiate side agreements (the "small work" agreements) governing the employment of a new class of journeymen electrical workers and new classes of residential work that would allow certain jobs to be performed by certain workers at lower wage rates.[2] *See* Ex. 7; Trial Transcript ("Tr.") at 612–13, 626, 658. The Chapter presented its proposals for these side agreements, known collectively as small work agreements, at a meeting held on April 27, 1987. *See* PTO at ¶ 5(10). These proposals were neither signed nor ratified by the members of Local 501. *See* Tr. at 78, 271–72.

Because the Chapter continued to refuse to sign the inside wiremen's agreement, both parties agreed to submit their disputes to arbitration before the Council on Industrial Relations ("CIR"). *See* PTO at ¶ 5(12). On May 18, 1987 the arbitrator handed down a decision which directed the parties to sign both the main agreement and the small work proposals made by the Chapter. *See* PTO at ¶ 5(13); Ex. 58. This award was later vacated by this Court on the ground that it went well beyond the issues that the parties had agreed to submit to the arbitrator. *See* Order dated February 17, 1988.

---

1. The paragraphs of the PTO cited in this opinion refer to undisputed facts.

2. The small work agreements vary from the inside wiremen's agreement, *inter alia,* in the following respects. The small work agreements require an eight hour day as opposed to the seven hours required by the main agreement. In addition, the small work agreements provide for a wage rate less than half that required by the main agreement, and allow the employer to obtain employees without going through the normal union referral process. *Compare* Ex. 7, the main agreement, with Exs. 65 & 66, the small work agreements.

Donald Werle and Michael Horrigan learned of the aforesaid award in early June of 1988. As president and business manager of the Union, Werle and Horrigan had been actively involved in the negotiations with the Chapter. Although they both signed the small work agreements on behalf of the Local on June 11 and June 18, 1987 respectively, *see* PTO at ¶ 5(14), these agreements were never submitted to the membership of Local 501 for ratification, nor were they ever approved by the Local's executive board. *See* Tr. at 66, 78, 271–72.

On June 22, 1987 the Local's executive board met and discussed the arbitration award. Present at that meeting was the Local's attorney Ralph P. Katz who advised the board to refrain from sending the agreements to the IBEW for approval and to attempt to have the arbitrator's award judicially vacated. *See* Tr. at 2, 95, 101, 110–11. At the June 22 meeting, defendant Werle informed the board that he had already signed the agreements. Horrigan did not so inform the board. *See* Tr. at 95–96, 111, 230. Despite indications from the board that they should seek to have the award vacated, Horrigan sent the agreements to the IBEW for approval on June 24 or 25. *See* Tr. at 257–58.

The members of Local 501 were not informed of the arbitrator's award until the June 25 membership meeting. *See* Tr. at 71, 152–53. Even then only a cursory mention was made of the existence of the small work agreements. *See* Ex. 62; Tr. at 73–74, 153–55. Upon the insistence of the members, however, a special meeting was called for July 7, 1987 to discuss the small work agreements. Tr. at 75, 154. At that meeting a question and answer session was held, but the question of whether the Local should seek to have the award vacated was never put to the members. Tr. at 282–89.

However, at the next regular membership meeting, plaintiff Kozera presented a petition signed by 104 members asking the board to bring suit to vacate the award. *See* PTO at ¶ 5(16); Tr. at 157–59, 284–85.

This petition and the threat of a lawsuit by the members prompted defendant Horrigan to take his own poll of the membership, but was apparently not enough to cause Local 501 to then take legal action. Thereafter, following the commencement of this lawsuit, Local 501 joined in plaintiffs' effort to have the arbitrator's award vacated.

Meanwhile, the Chapter and its members were busy implementing the newly signed small work agreements. *See* Tr. at 682–83. Thus, at least some of the Chapter's members have hired people as provided in the small work agreements and have paid them the lower wages allowed by those agreements. Tr. at 684–85.

Plaintiffs contend that by failing to submit the small work agreements for ratification, by failing to challenge the arbitrator's award, and by failing to timely inform the members of the existence and scope of the arbitration award, Local 501 breached its duty of fair representation. In addition, plaintiffs allege that the Chapter aided and encouraged this breach. Plaintiffs also contend that defendant Chapter breached the inside wiremen's agreement by implementing the allegedly invalid small work agreements.[3] For the reasons that follow, the Court finds that the small work agreements are invalid, and that the Chapter breached the main agreement, but that the Union did not breach its duty of fair representation.

## DISCUSSION

### I. *Jurisdiction*

In order to decide whether the Chapter has breached its collective bargaining agreement with Local 501, this Court must necessarily pass upon the validity of both the main agreement and the small work agreements, since there can be no claim for breach absent a valid contract. A threshold question therefore arises as to whether a federal district court has jurisdiction to

---

**3.** In addition, Chapter and Local 501 have cross claimed against each other seeking to respectively confirm and vacate the arbitrator's award and asking for compensatory damages and costs in this action. *See* PTO at 3.

determine the validity of a collective bargaining agreement.

Plaintiffs contend that the Court has jurisdiction under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1982).[4] Defendants, on the other hand, argue that the question of validity must, in the first instance, be one for the arbitrator. In addition, defendants argue that section 301 by its terms confers subject matter jurisdiction only with respect to actions for breaches of collective bargaining agreements, and does not permit federal courts to determine the validity of such agreements. That argument lacks merit and must be rejected.

 The Court is not unmindful of the policies favoring the arbitration of labor disputes. *See e.g., Local 150 v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972). However, there can be no question that Section 301 confers jurisdiction on federal courts to determine if collective bargaining agreements have been breached. *See Baldracchi v. Pratt & Whitney,* 814 F.2d 102 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 2819, 100 L.Ed.2d 920 (1988). In order to determine whether a breach has occurred the Court must necessarily determine that a valid collective bargaining agreement exists which could be breached. In sum, the grant of jurisdiction to determine the existence of a breach implicitly confers upon the Court the jurisdiction to determine validity.

Common law principles of contract law also support this view. In every breach of contract action the existence of a valid contract is an essential element. It is, therefore, not surprising that the Third, Fifth, Seventh, Ninth, Tenth and Eleventh Circuits have held that federal courts have

jurisdiction to determine the validity of collective bargaining agreements. *See IBEW, Local 481 v. Sign–Craft, Inc.,* 864 F.2d 499 (7th Cir.1988); *Mack Trucks, Inc. v. Int'l Union, UAAIW,* 856 F.2d 579 (3d Cir.1988); *Rozay's Transfer v. Local Freight Drivers,* 850 F.2d 1321 (9th Cir.1988); *McNally Pittsburgh, Inc. v. Int'l Assoc. of Iron Workers,* 812 F.2d 615 (10th Cir.1987); *Bd. of Trustees v. Universal Enterprises,* 751 F.2d 1177, 1184 (11th Cir.1985); *United Steelworkers of America v. Rome Indus., Inc.,* 437 F.2d 881 (5th Cir.1970). In view of that circumstance, it is reasonable to expect that the Second Circuit, if presented with the issue, would reach a similar conclusion.

## II. *Breach of Contract*

 Plaintiff contends that the Chapter breached the main collective bargaining agreement by implementing the small work agreements, which were never ratified by the membership. Defendant Chapter argues, however, that in the absence of a valid agreement on the small work agreements there could be no collective bargaining agreement to breach because those agreements were part and parcel of one collective bargaining agreement.[5]

The Court rejects the Chapter's claim. The testimony that the Court finds credible establishes that the Chapter entered into the main agreement to avoid the possibility of a strike, while the Union entered into the main agreement, at least in part, to placate the IBEW.[6] *See* Tr. at 42–43, 625–26. Moreover, it is clear not only that each side had its own reason for entering into the main agreement, but also that both sides agreed that the issue of small work agree-

---

**4.** 29 U.S.C. § 185(a) states in relevant part that: Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....

**5.** Neither party has argued that the dispute as to the severability of the small work agreements from the main agreement is one for the arbitrator to decide under the previous collective bar-

gaining agreement which expired in 1986. The Court will therefore assume, as it must, that the parties have waived any rights they may have had to arbitrate that issue. *See Van Ness Townhouses v. Mar Industries, Corp.,* 862 F.2d 754 (9th Cir.1988).

**6.** According to the testimony of Horrigan the IBEW was exerting pressure upon the Local to come to an agreement or face undesirable consequences. *See* Tr. at 534, 537.

ments could be left to future negotiations.[7] *See* Tr. at 612–13, 626, 658.

 Having found that the main agreement is valid, the Court must next consider the issue of whether the implementation of the small work agreement by the Chapter breached the main agreement. Since there could be no such breach if Werle and Horrigan had the authority to bind the union to the terms of the small work agreement, the existence or non-existence of that authority is central to the breach of contract claim.

Section 301(b) provides that a union is bound by the acts of its agent. *See* 29 U.S.C. § 185(b) (1982). However, that statute has been construed to require that the power of the agent to bind the union be determined in accordance with common law principles of agency. *See Carbon Fuel Co. v. Mine Workers,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). Thus, the Court must determine whether the Chapter was entitled to rely upon either the actual or apparent authority of Werle and Horrigan when it implemented the small work agreements.

Actual authority is not established here by any written document. On the contrary, the IBEW Constitution specifically states that only the executive board has the power to act for the membership in between membership meetings. *See* IBEW Constitution, Art. 19, § 9 (1986). Therefore, only the executive board, not the president or its business manager, had actual authority to bind the Union.

Moreover, the Chapter's contention that Werle and Horrigan were authorized to sign the small work agreement at the June 22, meeting is not supported by the record. Quite aside from the fact that the so called authorization was allegedly given after the small work agreement had already been signed, the Court finds that the credible testimony establishes that the Executive Board never approved the small work agreement and did not confer any authority *nunc pro tunc* on Werle and Horrigan, even assuming arguendo that it could have properly done so. *See* Tr. at 95, 110, 411. It is also clear that the board expressed a preference for taking legal action to vacate the arbitration award which had directed the Union to sign the small work agreement. *See* Tr. at 95, 110, 411. Moreover, the board was never informed, even at the June 22 meeting, that Horrigan had signed the small work agreement. *See* Tr. at 95–96, 111. Given these circumstances, Werle and Horrigan could not and did not have any actual authority to bind the Union.

 Nor was the Chapter entitled to rely upon apparent authority. Apparent authority must be established by proof of something said or done by the principal which justifies reasonable reliance on the authority of the agent. *See Central States Southeast and Southwest Areas Pension Fund v. Kraftco. Inc.,* 799 F.2d 1098, 1112 (6th Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1291, 94 L.Ed.2d 147 (1987); *Moreau v. James River–Otis, Inc.,* 767 F.2d 6, 9 (5th Cir.1985). There is no such proof here. Indeed past practice, which arguably can support reasonable reliance on apparent authority, demonstrated that Werle and Horrigan could not act in the absence of membership ratification because all prior agreements between the Chapter and the Union had been submitted to the membership for ratification. *Cf. Goclowski v. Penn Central Transportation Co.,* 571 F.2d 747, 756 (3d Cir.1977); *Battle v. Clark Equip. Co.,* 579 F.2d 1338 (7th Cir.1978).

In short, it is clear from the evidence presented at trial that the Chapter was aware that ratification by the membership was required, and that it could not have reasonably relied on the actions of Werle and Horrigan which deviated from the past

---

**7.** While it is true that the arbitrator found on remand that the Chapter should not be compelled to sign the collective bargaining agreement because of the absence of a successfully negotiated small work agreement, the arbitrator did not find that the main agreement was invalid but only that the Chapter was not required to sign it. However, the failure of a party to sign a collective bargaining agreement does not necessarily affect its validity. Indeed, it is a well established doctrine in federal labor law that a collective bargaining agreement need not be signed to be valid. *See American Federation of Television and Radio Artists v. Inner City Broadcasting Corp.,* 748 F.2d 884, 887 (2d Cir.1984).

practice of the Union and the Chapter in negotiating collective bargaining agreements.[8] *See* Tr. at 51–52, 328–29; Ex. 25. That knowledge belies any claim by the Chapter that its actions were taken in good faith. *See Battle, supra,* 579 F.2d at 1349–50.

The Court therefore finds that Local 501 did not ratify the small work agreements, that the Chapter was aware both that the agreements had to be ratified by the membership, that Werle and Horrigan had no actual or apparent authority to bind the Local in the absence of such ratification, and that implementation of those agreements constituted a breach of the inside wiremen's agreement.

### III. *Breach of the Duty of Fair Representation*

Plaintiffs also allege that Local 501 breached its duty of fair representation by failing to submit the small work agreements for ratification, by failing to challenge the arbitrator's award, and by failing to timely apprise the membership of the existence of the award and the signing of the small work agreements. Defendant Local 501, while not taking issue with most of the facts elicited at trial, contends that its actions do not rise to the level of a breach of duty, that it acted under duress, and that because the acts of Werle and Horrigan were not authorized by the Union those acts cannot give rise to a breach of duty by the Union.

A Union breaches its duty of fair representation when it acts arbitrarily, discriminatorily or in bad faith toward its members. *See Ryan v. Pressmen's Union,* 590 F.2d 451, 455 (2d Cir.1979); *see also American Postal Workers v. American Postal Workers,* 665 F.2d 1096 (D.C.Cir. 1981). Actual malice or bad faith is not essential so long as the Union acts with gross disregard or indifference to the right of its members.[9] *See Ryan, supra,* 590 F.2d at 455; *NLRB; supra* 740 F.2d at 146. However, the breach of duty of good faith must be properly attributed to the Union itself, and cannot be based upon the unauthorized acts of its officers or representatives. It follows that the issue of whether the union can be sued for breaching its duty to the members, like the issue of the validity of the small work agreement, turns upon whether Werle and Horrigan's conduct can be properly attributed to the Union.

The Court finds that Werle and Horrigan's conduct cannot be properly imputed to the Union. By the terms of the Union's Constitution and bylaws, only the executive board possessed authority to act on behalf of the Union. *See* IBEW Constitution, Art. 19, § 9 (1986). Moreover, the Court has already found that the executive board never authorized either the signing of the small work agreements or the sending of them to the IBEW, and that both of these acts were accomplished without the knowledge of the executive board. *See* discussion *supra,* at 649. The Court also

8. The fact that the actions were taken in part at the direction of the arbitrator does not change this result. The Chapter was certainly aware and should have been aware that the arbitrator's direction arguably exceeded his powers as this Court has since found.

Similarly there is no legal relevance to the Chapter's argument that federal law does not require ratification of a collective bargaining agreement by the membership absent a provision in the union's constitution or bylaws imposing that requirement. The issue here is not what federal law requires, but whether these officers had actual or apparent authority to bind the union in the absence of ratification in accordance with common law principles of agency. Past practice of the union is, of course, relevant to the issue of apparent authority, especially where, as here, it is not inconsistent with either the Constitution or bylaws of the local or international union, both of which are silent with respect to the need for membership ratification. Moreover, the probative value of that practice with respect to the issue of authority is not diminished by the fact that federal labor law does not require ratification. *See Central States, supra,* 799 F.2d at 1111.

9. The Court rejects the Union's argument that the duty only applies to treatment of individual employee grievances. A Union's duty of fair representation encompasses a far broader range of Union misconduct. *See e.g., Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *NLRB v. Local 282,* 740 F.2d 141 (2d Cir.1984).

finds that the executive board could not have reasonably foreseen that the officers would act as they did. In sum, the Court concludes that the unauthorized conduct of a Union official cannot be the basis for a finding that the Union, as opposed to the officers, has breached a duty to its members, merely because those officers have abused the authority conferred on them by the membership.[10]

### IV. Duress

Local 501 has also sought to vacate the small work agreements on the ground that they were obtained by duress. Specifically, the Union contends that in addition to the arbitration award, pressure from the IBEW to reach an agreement and the Chapter's knowledge and use of that pressure forced Werle and Horrigan to sign the agreement. That claim lacks merit.

 Since the officers had the option of challenging the arbitrator's award in the Courts rather than signing it, the arbitrator's directive to sign the agreements cannot constitute legal duress. Moreover, the threat of action by the IBEW, whether real or merely perceived, cannot constitute duress because it is not properly attributable to the Chapter. Duress is a basis to invalidate a contract only when the duress is exercised by the other contracting party, not some third party. See Citibank v. Graphic Scanning Corp., 459 F.Supp. 337 (S.D.N.Y.1978); Weinraub v. Int'l Banknote Co., 422 F.Supp. 856 (S.D.N.Y.1976).

 The fact that that Chapter stated that it would not sign the main agreement unless Werle and Horrigan signed the small work agreements is a legally insufficient predicate for any claim of duress. A negotiating demand by an adverse party cannot be a sufficient predicate for a claim of duress, since that type of pressure is at the heart of virtually every contractual negotiation. Cf. Weinraub, supra, 422

F.Supp. at 859; Restatement (Second) of Contracts § 492 (wrongful threat is required). This is especially true where, as here, an arbitrator has upheld the Chapter's refusal to sign the main agreement. It follows that Local 501 has failed to show that Werle and Horrigan signed the small work agreements under duress.

### CONCLUSION

For the reasons set forth above, the Court orders the following relief. The small work agreements are hereby declared void and of no effect. The Inside Wiremen's agreement is and shall remain in effect for the remainder of its term. The question of damages, costs and attorneys fees' and class certification shall be taken up at the next Conference on June 30, 1989 at 12:30 PM.

It is SO ORDERED.

---

10. Since the Union did not breach its duty, the Chapter could not, as plaintiffs allege, have participated in that breach. In any event, the Chapter's conduct in seeking to promote its own interest by maintaining its own legal and factual contentions in arms length negotiations with the Union is not legally sufficient to sustain a finding that it aided and abetted the Union's alleged breach. See e.g., Battle v. Clark, 579 F.2d 1338 (7th Cir.1978).