Ted **KOZERA**, Richard M. Mekeel, and Arthur Filardi, each individually and as a member of Local Union 501 of International Brotherhood of Electrical Workers and employees covered by its Inside Wiremen's Agreement, and each on behalf of all employees whose wages and conditions are governed by such Agreement, similarly situated, Plaintiffs,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO; Local Union 501 of International Brotherhood of Electrical Workers, AFL–CIO; Westchester Fairfield Chapter of National Electrical Contractors Association, Inc.**

**and**

Briar Electric, Inc., G.C. Monaco Electric, Inc., and Dynatram, Division of Dyna Electric, each of them individually and as representative of all employers bound by or party to the 1989–1992 Inside Wiremen's Agreement, similarly situated, Defendants.

No. 92 Civ. 0058 (JES).

United States District Court,
S.D. New York.

July 11, 1995.

Hall & Sloan, New York City (Wendy E. Sloan, of counsel), for plaintiffs.

Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC (Richard M. Resnick, of counsel), for defendant, IBEW.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City (Seymour M. Waldman, of counsel), for defendant, Local 501.

Twinig, Nemia & Steflik, Binghamton, NY (Joseph J. Steflik, of counsel), for defendant, Westchester–Fairfield Chapter, NECA.

Schmeltzer, Apataker & Shephard, P.C., Washington, DC (Gary L. Lieber, of counsel), for defendant Dynatram.

## MEMORANDUM OPINION
## AND ORDER

SPRIZZO, District Judge.

Plaintiffs Ted Kozera, Richard Mekeel and Arthur Filardi (collectively "plaintiffs") bring this action against the International Brotherhood of Electrical Workers ("IBEW"), Local 501 of the IBEW ("Local 501"), Westchester Fairfield Chapter of National Electrical Contractors Association, Inc. ("Chapter") and

Dynatram, Division of Dyna Electric ("Dynatram"). As members of Local 501, plaintiffs claim, *inter alia*, that a trusteeship was improperly imposed and maintained upon their union in order to suppress a purportedly uncooperative faction. Defendants IBEW, Local 501, Chapter, and Dynatram move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motions of IBEW, Local 501 and Dynatram are denied, and the motion of Chapter is granted in part and denied in part.

## BACKGROUND

The instant litigation is a sequel to an earlier action filed in this court. *See Kozera v. Westchester Fairfield Chapter of Nat'l Elec. Contractors Ass'n, Inc. ("Kozera I")*, 714 F.Supp. 644 (S.D.N.Y.1989), *rev'd in part and vacated in part*, 909 F.2d 48 (2d Cir. 1990), *cert. denied*, 498 U.S. 1084, 111 S.Ct. 956, 112 L.Ed.2d 1044 (1991).

As an affiliate of IBEW, Local 501 represents its members in collective bargaining negotiations with Chapter, whose membership is comprised of individual electrical contractors.[1] *Kozera I*, 714 F.Supp. at 646. In June 1986, on the eve of an impending strike, Local 501 and Chapter negotiated the 1986–89 Collective Bargaining Agreement (the "1986–89 CBA"), which contained the 1986–89 Inside Agreement. *Id.* The 1986–89 CBA was ratified by the Local 501 membership in accordance with past union practice, but Chapter did not sign it. *Id.*

On April 27, 1987, Chapter proposed to supplement the 1986–89 Inside Agreement by adding to that agreement the 1986–89 Residential Agreement and the Memorandum of Understanding for Small Work (the "1986–89 Small Work Agreement").[2] *Kozera*

*I*, 714 F.Supp. at 646. Despite protracted negotiations, Chapter refused to sign the 1986–89 Inside Agreement unless Local 501 signed the other two agreements. *Id.* In May 1987, after submitting the dispute to arbitration before the Council on Industrial Relations ("CIR"), the parties were ordered to sign each of the agreements. *Id.*

As the president and business manager of Local 501 respectively, Donald Werle and George Horrigan were actively involved in the collective bargaining negotiations with Chapter. *Kozera I*, 714 F.Supp. at 647. In June 1987, responding to pressure exerted by IBEW to comply with the CIR award, Werle and Horrigan signed both the 1986–89 Residential Agreement and the 1986–89 Small Work Agreement, but failed to seek ratification from the Local 501 membership. *Id.* at 647, 651. Thereafter, the Local 501 membership divided along factional lines: the "Kozera faction" urged action to challenge the 1986–89 CBA, while the "Horrigan faction" opposed measures that might exacerbate Local 501's problematic relationship with IBEW. In July 1987, plaintiff Ted Kozera and other members of Local 501 commenced *Kozera I* against IBEW, Local 501 and Chapter.

On May 30, 1989, at the conclusion of a bench trial, this Court held that the 1986–89 Inside Agreement, as ratified by the Local 501 membership, was enforceable. *Kozera I*, 714 F.Supp. at 648–51. The Court also concluded, however, that the 1986–89 Residential Agreement and 1986–89 Small Work Agreement were unenforceable because, absent ratification from the Local 501 membership, Horrigan and Werle lacked apparent authority to execute the agreements. *Id.* at 650. In the end, the Court held that Chapter violated the 1986–89 Inside Agreement by

---

1. Local 501 represents inside wiremen. As defined by the IBEW constitution, an inside wireman is responsible for the "[i]nstallation ... maintenance and repair of all electrical work in isolated plants and within property lines of any given property." Affidavit of Michael Hayes Sworn to April 7, 1993 ("Hayes Aff.") Exh. 1, Art. XXVIII, § 5.

2. In general, the 1986–89 Inside Agreement governed commercial electrical work, the 1986–89 Small Work Agreement governed light commer-

cial work and the 1986–89 Residential Agreement governed residential work. *See Kozera I*, 909 F.2d at 50–51. The 1986–89 Residential Agreement and the 1986–89 Small Work Agreement provided for a considerably lower wage rate than the 1986–89 Inside Agreement. *See Kozera I*, 714 F.Supp. at 646 n. 2. By reassigning work normally governed by the 1986–89 Inside Agreement, IBEW sought to recapture work performed by non-union electricians.

implementing the unauthorized 1986–89 Residential Agreement and the 1986–89 Small Work Agreement. *Id.*

On appeal, the Second Circuit reversed in part and remanded. The court concluded that the 1986–89 Inside Agreement, the 1986–89 Residential Agreement and the 1986–89 Small Work Agreement were valid and enforceable. *Kozera I,* 909 F.2d at 54. The Court also concluded that Chapter, relying upon the apparent authority of Local 501 officials, did not breach the 1986–89 Inside Agreement by implementing the other two agreements. *Id.* The Second Circuit remanded for a factual determination concerning whether Local 501, through Horrigan and Werle, had breached its duty of fair representation. *Id.* at 55. On remand, this Court found as a matter of fact, after a full hearing, that Local 501 did not breach its duty of fair representation.

In January 1989, while *Kozera I* was still pending, IBEW Representative Edwin Hill recommended to the IBEW that Local 501 be placed under trusteeship. Hayes Aff. Exh. 16. The recommendation, allegedly based upon Local 501's refusal to accept the 1986–89 Residential Agreement and the 1986–89 Small Work Agreement, cited "the filing of the lawsuits against the contractors" and the "hostile mood" pervading Local 501. *Id.*

In May 1989, the 1986–89 CBA expired. After a three week strike, Chapter and Local 501 negotiated the 1989–92 Collective Bargaining Agreement (the "1989–92 CBA"), which was signed by both parties. Affidavit of Bruce DeShay Sworn to April 7, 1993 ("DeShay Aff.") ¶ 6; Affidavit of Ted Kozera Sworn to February 5, 1992 ("Kozera Aff.") ¶ 15. The 1989–92 CBA, like its predecessor, contained an Inside Agreement and a Residential Agreement, which provided for annual incremental wage increases. DeShay Aff. ¶¶ 7–8. However, the 1989–92 CBA did not contain the Memorandum of Understanding for Small Work. *Id.* ¶ 8.

Notwithstanding the negotiation of the 1989–92 CBA, Edwin Hill continued to investigate Local 501. In March 1990, Hill conducted an internal audit of Local 501. Plaintiffs' Memorandum of Law ("Pltf.Mem.") Exh. 8, pp. 20–21. In April 1990, Hill met with Bruce DeShay, the executive manager of Chapter, and various individual electrical contractors. According to DeShay, the meeting concerned market status, non-union competition and labor relations. DeShay Aff. ¶¶ 11–12. In addition to Hill's investigation, IBEW collected a variety of complaints from Chapter regarding the operations of Local 501. In one correspondence, for example, Morton Hoffman, the national vice-president of Chapter, requested that IBEW President J.J. Barry "use [his] position and authority to bring about changes in Westchester." Hayes Aff.Exh. 13.

On May 8, 1991, following a two year investigation, IBEW held a hearing, pursuant to its constitution, to determine whether Local 501 should be placed under trusteeship. Hayes Aff.Exh. 40; Affidavit of Edwin Hill Sworn to July 25, 1991 ("1st Hill Aff.") ¶ 6. After lengthy testimony, which included the participation of Local 501 members, President Barry placed Local 501 under trusteeship.[3] 1st Hill Aff. ¶¶ 7–9; Affidavit of Edwin Hill Sworn to March 20, 1992 ("2d Hill Aff.") ¶ 8.

The period of trusteeship commenced on July 5, 1991. Shortly thereafter, IBEW suspended Local 501's regular union activities and appointed trustees to conduct union business, including collective bargaining negotiations. 1st Hill Aff. ¶ 10; Hayes Aff.Exh. 42; Affidavit of J.J. Barry Sworn to April 5, 1993 ("Barry Aff.") Exh. 1. In July 1991, Bruce DeShay contacted Edwin Hill, a named trustee, to discuss Chapter's proposal to amend the 1989–92 CBA. DeShay Aff. ¶¶ 19–20. At that time, DeShay informed Hill that Chapter and Local 501 discussed the proposed amendment at an earlier labor-management meeting. *Id.* ¶¶ 19–20, Exh. B.

On or about July 24, 1991, the trustees and Chapter agreed to amend the 1989–92 CBA by extending its duration for an additional

---

**3.** Prior to the hearing, on April 11 and May 1, 1991, IBEW informed Local 501 of the eleven charges filed against it. 1st Hill Aff. ¶ 5; Hayes Aff.Exhs. 29, 39. Of these charges, nine were sustained as the basis for imposing trusteeship. 1st Hill Aff.Exh. 30.

year and deferring an upcoming wage increase. Pltf.Mem.Exh. A, pp. 164–70, Exh. O, p. 208. Plaintiffs contend that the trustees received no consideration from Chapter in return for this extension and wage freeze. IBEW counters that the concessions were proffered to effectuate a market recovery and to settle an unrelated lawsuit between Chapter and Local 501.

On January 20, 1992, after further negotiations with Chapter, the trustees submitted a revised collective bargaining agreement (the "revised CBA") to President Barry. In addition to the wage deferral and extension amendments negotiated on July 24, 1991, the revised CBA contained a newly negotiated Small Work Agreement. Pltf.Mem.Exh. 3. On March 20, 1992, Barry approved the revised CBA, except for the Small Work Agreement contained therein, which he stamped "NOT APPROVED." *Id.* Plaintiffs contend that the trustees implemented the revised CBA prior to Barry's approval in violation of the IBEW constitution and the original 1989–92 CBA.

Plaintiffs also set forth claims against Dynatram, an individual electrical contractor. These claims are apparently based on the fact that although not a member of Chapter, Dynatram adopted the terms of the 1989–92 CBA for the purpose of conducting work at the Mamaroneck Water Waste Treatment Plant in Westchester County. By the end of 1991, plaintiff Richard Mekeel's association with the Kozera faction was apparent at Local 501 union meetings. Pltf.Mem.Exh. D, p. 111, Exh. E, p. 83. During August and September 1991, for example, Mekeel and others circulated a petition decrying the governance of the IBEW trustees. *Id.* Exh. 18.

In January 1992, Timothy Broder, a supervisor at Dynatram and the recording secretary of Local 501, laid off Mekeel from his employment at Dynatram. *Id.* Exh. D, p. 76, Exh. I, pp. 5, 142, 146, 166–67. Plaintiffs therefore claim, *inter alia,* that Dynatram terminated Mekeel in violation of the 1989–92 CBA.

## DISCUSSION

■■■ On a motion for summary judgment, the moving party has the burden of demonstrating that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). It is well-established that a fact is material when its resolution would "affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On the other hand, a party opposing a motion for summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## I. CLAIMS AGAINST IBEW

### A. *Title III Claims*

■■ Plaintiffs contend that IBEW established and maintained a trusteeship for the impermissible purpose of suppressing the Kozera faction in violation of Title III of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 461, *et seq.*[4] Under Title III, a labor union may

---

**4.** IBEW contends that the Title III claims are time-barred. Although Title III fails to provide an explicit period of limitations, IBEW urges the Court to borrow the six-month statute of limitations of the National Labor Relations Act, 29 U.S.C. § 160(b). The Court need not reach this issue, however, because plaintiffs' cause of action is timely even under a six-month statute of limitations.

The imposition of trusteeship occurred on July 5, 1991. Under Fed.R.Civ.P. 6(a), a six-month statute of limitations would have expired at the close of business on Monday, January 6, 1992, rather than on Sunday, January 5, 1992. *See*

*Scanio v. United States,* 37 F.3d 858, 860 (2d Cir.1994). While plaintiffs initially asserted the Title III claims in an amended complaint on February 7, 1992, about seven months following the imposition of the trusteeship, they filed their original complaint on January 6, 1992. Under Rule 15(c), the date of an amended pleading relates back to the date of the original pleading if "the claim asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading." Fed. R.Civ.P. 15(c). Thus, because the Title III claims clearly arose out of the conduct set forth in the original complaint, the amended complaint relates back to the date of the original complaint

establish and administer a trusteeship only for valid purposes which include "correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out legitimate objects of such labor organization." 29 U.S.C. § 462. Where, as here, a labor organization establishes a trusteeship in accordance with its constitution and by-laws, and conducts the statutorily required fair hearing, the trusteeship

> shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 302 [29 U.S.C.S. § 462].

29 U.S.C. § 464(c); *see also Executive Bd. Local 1302 v. United Bhd. of Carpenters & Joiners,* 477 F.2d 612, 615 (2d Cir.1973) (union's actions toward self preservation protected by § 462) (quoting *Nat'l Association of Letter Carriers v. Sombrotto,* 449 F.2d 915, 923 (2d Cir.1971)).[5]

Notwithstanding this presumption of validity, IBEW is not entitled to summary judgment on the facts of this case. In recommending the imposition of trusteeship, Hill alluded to Local 501's failure to ratify the 1986–89 Small Work Agreement and the ensuing litigation. Hayes Aff.Exh. 16. Shortly after the imposition of the trusteeship, the trustees negotiated a wage freeze without ratification by the Local 501 membership and arguably without adequate consideration. Moreover, the trustees negotiated and allegedly implemented the revised CBA, which contained a Small Work Agreement similar to that opposed by the Kozera faction, and which the IBEW President had stamped as "not approved." Whether that action was designed to suppress the Kozera faction or to promote valid union objectives is an issue as to which conflicting rational inferences could

be drawn based upon the aforesaid facts. It follows that summary judgment as to the Title III claims must be denied.

### B. *Title I Claims*

Plaintiffs also claim that IBEW established and maintained the trusteeship as a means of restricting their right to sue, to free speech and to free association in violation of Title I of the LMRDA, 29 U.S.C. § 411, *et seq.,* which provides:

> [e]very member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings.

29 U.S.C. § 411. Plaintiffs also assert that Article IV, § 3(9) of the IBEW Constitution violates Title I. This section provides, in part, that "[t]he International President may suspend any local union officer or member who offers interference [to the imposition of trusteeship]." Hayes Aff.Exh. 1.

 Although Title III itself provides a framework for evaluating the validity of trusteeships, it should "be construed in a manner consistent with the protection provided by Title I." *Sheet Metal Workers' Int'l Ass'n v. Lynn,* 488 U.S. 347, 357, 109 S.Ct. 639, 646, 102 L.Ed.2d 700 (1989); *see also United Bhd. of Carpenters & Joiners v. Brown,* 343 F.2d 872, 882–83 (10th Cir.1965). Moreover, in assessing the validity of the provisions of IBEW's constitution, the Court must balance its impact on Title I rights against its rational relation to "the protection of the organization as an institution." *United Steelworkers of America v. Sadlowski,* 457 U.S. 102, 111–12, 102 S.Ct. 2339, 2346, 72 L.Ed.2d 707 (1982).

 The Court concludes that IBEW is not entitled to summary judgment on either

---

and the Title III claims are timely. *See Ingram v. Kumar,* 585 F.2d 566, 569–70 (2d Cir.1978).

**5.** In this case, IBEW has offered uncontroverted evidence that it complied with its constitution

and by-laws in establishing the trusteeship and conducted the statutorily required fair hearing. 1st Hill Aff. ¶¶ 3–11.

of these Title I claims. The actions of the IBEW, which the Court has concluded warrants a denial of summary judgment with respect to the Title III claims, are likewise sufficient to raise a material issue of fact with respect to the Title I claims. This is especially true since the concept of interference with a union trusteeship, as expressed in Article IV, § 3(9) of the IBEW Constitution, is broad enough to encompass an interference resulting from the exercise of rights protected under Title I.

## C. *Duty of Fair Representation Claims*

 Plaintiffs also claim that IBEW breached its duty of fair representation by establishing and maintaining the trusteeship. Under section 8(b) of the NLRA, a labor organization has a "statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). In order to breach the duty of fair representation, a labor organization must act either arbitrarily, discriminatorily, or in bad faith towards its membership. *Id.; see also N.L.R.B. v. Local 282, Int'l Bhd. of Teamsters,* 740 F.2d 141, 148 n. 13 (2d Cir.1984) (bad faith sufficient, but not necessary). Here, too, there are genuine issues of material fact bearing upon IBEW's motivation in establishing the trusteeship that cannot be resolved on a motion for summary judgment.

 Plaintiffs also claim that IBEW breached its duty of fair representation by negotiating the revised CBA. In determining whether a breach occurred in the context of collective bargaining negotiations, the Court "must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 78, 111 S.Ct. 1127, 1135, 113 L.Ed.2d 51 (1991). The terms of a collective bargaining agreement "may constitute evidence of a breach of duty only if [they] can be fairly characterized as so far outside a 'wide range of reasonableness,' . . . that [they are] wholly 'irrational' or 'arbi-

trary.'" *Air Line Pilots,* 499 U.S. at 78, 111 S.Ct. at 1135 (quoting *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953)). Although the issue is much closer on these claims in view of the stringent standard plaintiffs must meet, the Court is still constrained to deny IBEW's motion for summary judgment.

 Back in 1986, the Local 501 membership expressed strong opposition to the 1986–89 Small Work Agreement by withholding ratification and commencing litigation. Nonetheless, within weeks of assuming power, the trustees negotiated a wage freeze and an extension of the 1989–92 CBA, arguably without receiving adequate consideration. Pltf.Mem.Exh. O, p. 212. The trustees then allegedly negotiated the revised CBA, which contained a new Small Work Agreement, arguably without receiving any concessions from Chapter in return for that benefit, and implemented the Small Work Agreement which President Barry had not approved. In view of these facts, the Court cannot conclude that a rational fact finder could not conclude that this action was outside the scope of reasonableness.

## D. *§ 301 Contract Claims*

 Plaintiffs also claim that IBEW implemented the revised CBA, which contained the new Small Work Agreement, in violation of the IBEW constitution and the 1989–92 CBA. Plaintiffs therefore seek relief under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 *et seq.* on a breach of contract theory.

Under the IBEW Constitution, the trustees could not "effect any bylaw, amendment or agreement of any kind without first securing" the approval of President Barry. Hayes Aff.Exh. 1, Art. XVII, § 6. Similarly, under the 1989–92 CBA, the trustees could not effect a "change or supplement[ation]" without approval by IBEW. Third Amended Complaint, Exh. A, Art. 1, § 1.03. Here, President Barry had stamped a portion of the revised CBA, *i.e.,* the Small Work Agreement, as not approved, and therefore there is an issue of fact as to whether the trustees implemented the revised CBA in violation of the IBEW Constitution and the 1989–92

CBA. Summary judgment must therefore be denied.

## II. CLAIMS AGAINST CHAPTER

### A. *Participation in the Breach of the Duty of Fair Representation*

Plaintiffs, relying upon *Teamsters Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (plurality opinion), contend that Chapter participated in IBEW's breach of its duty of fair representation by actively engaging in the imposition and maintenance of the trusteeship and by executing the revised CBA.

 While an employer may be jointly and severally liable for a union's breach of its fiduciary obligations to its members, such liability can only exist where the facts permit a rational inference that the employer has colluded with, and participated in the union's breach. *See Vaca*, 386 U.S. at 197 n. 18, 87 S.Ct. at 920 n. 18; *Lewis v. Tuscan Dairy Farms, Inc.*, 25 F.3d 1138, 1145–46 (2d Cir. 1994); *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1283 (7th Cir.1985); *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790, 798–99 (2d Cir. 1974); *but c.f. American Postal Workers Union, Local 6885 v. American Postal Workers Union, AFL–CIO*, 665 F.2d 1096, 1108 (D.C. 1981) (rejecting claim for participation in breach of duty of fair representation); *Baker v. Newspaper & Graphic Comm. Union*, 628 F.2d 156, 160 (D.C.Cir.1980) (same); *Coleman v. Kroger Co.*, 399 F.Supp. 724, 731–32 (W.D.Va.1975) (same); *Glus v. G.C. Murphy Co.*, 329 F.Supp. 563, 567–68 (W.D.Pa.1971) (same).[6] In this case, while IBEW and its trustees arguably breached the 1989–92 CBA and the IBEW Constitution, there are no facts which would support a rational finding that Chapter participated in either breach.

 Even assuming, for purposes of this motion, that Chapter sought the imposition of the trusteeship to facilitate acceptance of the Small Work Agreement, and thereby benefitted from the alleged breaches by IBEW and its trustees, that conduct in itself is not a legally sufficient predicate for its liability to plaintiffs. As the employers' exclusive representative, Chapter "was required only to bargain in good faith with the employees' exclusive representative, and, in so doing, it was expected to represent its own interests, not those of the employees." *American Postal Workers*, 665 F.2d at 1109. Chapter cannot therefore be found to have aided and abetted or colluded in the union's breach merely by pursuing its own economic interests and fulfilling its obligations to its members. It follows that summary judgment must be granted to Chapter on this claim.

### B. § 301 Claim

 Plaintiffs claim that Chapter implemented the new Small Work Agreement in violation of the 1989–92 CBA. As noted above, the 1989–92 CBA explicitly required the parties to submit any modifications to IBEW for approval. Third Amended Complaint, Exh. A, Art. 1, § 1.03. A rational fact finder could infer that the Small Work Agreement was not approved because President Barry had stamped it "not approved." It follows that there is a genuine issue of fact as to whether Chapter was guilty of its own breach of the 1989–92 CBA by implementing the Small Work Agreement.

## III. CLAIMS AGAINST LOCAL 501

 Plaintiffs also claim that Local 501 implemented the revised CBA, which contained the new Small Work Agreement, in violation of its contractual obligations under the IBEW constitution and the 1989–92 CBA. On June 1, 1992, the trusteeship terminated, and Local 501 regained authority over its internal operations. Hayes Aff.Exh. 5. However, there is a factual dispute as to whether Local 501 implemented the new Small Work Agreement before or after that point in time. Pltf.Mem.Exh. A, p. 190. Thus, summary judgment must also be denied on this § 301 contract claim.

---

**6.** In the *Vaca, Lewis* and *Jones* cases, the employer's liability, if any, was premised upon its own breach of the governing collective bargaining agreement. *See Vaca*, 386 U.S. at 196, 87 S.Ct. at 920; *Lewis*, 25 F.3d at 1145–46; *Jones*, 495 F.2d at 798.

## IV. THE MEKEEL DISCHARGE

### A. § 301 Claim Against Dynatram

Plaintiffs claim that Dynatram terminated Mekeel in retaliation for his dissident activities and in violation of the 1989–92 CBA. As a threshold matter, Dynatram argues that Mekeel failed to exhaust his remedies under the grievance system set forth in the 1989–92 CBA.

■■■■ As a general rule, federal labor policy requires an employee to exhaust arbitration and grievance procedures provided in the collective bargaining agreement. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965).[7] However, where collusion between the union and the employer may render the filing of a grievance futile, the employer cannot rely upon the employee's failure to exhaust grievance procedures as a defense. *See Desrosiers v. American Cyanamid Co.*, 377 F.2d 864, 870–871 (2d Cir.1967); *Hiller v. Liquor Salesmen's Union Local No. 2*, 338 F.2d 778, 779 (2d Cir.1964); *see also Johnson v. General Motors*, 641 F.2d 1075, 1078–79 (2d Cir. 1981) (holding employer cannot rely upon a defense of failure to exhaust intraunion remedies). There are facts here supporting a rational inference of collusion, which may render that defense unavailable.[8]

■■■■ The Court is therefore required to reach the merits of this claim. In January 1992, Dynatram laid off Mekeel. Pltf. Mem.Exh. D, p. 76, Exh. I, pp. 5, 142, 146, 166–67, but did not change the employment status of Donald Raffa, *id.* Exh. F, p. 47.

The 1989–92 CBA, which governs the order of layoffs, provides that "[t]emporary employees, if any are employed, shall be laid off first." *Id.* Exh. 20, p. 52. Based upon the evidence submitted, there is clearly a factual dispute as to whether Raffa should be properly classified as a "temporary employee" or a "specialty employee." Since this dispute is relevant to the issue of whether the failure to lay off Raffa instead of Mekeel was a consequence of Mekeel's labor activities, summary judgment must be denied.

### B. Duty of Fair Representation Claims Against IBEW and Local 501

■■■■ Plaintiffs also claim that IBEW and Local 501,[9] acting in bad faith, caused the termination of Mekeel from Dynatram in breach of their duty of fair representation. Dynatram claims that the termination was due to a necessary reduction in the expenditure of man hours, and that the employees impacted by the reduction were randomly selected, *i.e.*, by picking names out of a "hat." *Id.* at I, pp. 147–48. However, plaintiffs have submitted evidence that layoffs in the electrical industry are normally based upon job performance, absenteeism, recentness of hire or other criteria, but not random selection. *Id.* Exh. D, pp. 78–80. There is therefore an issue of fact as to whether that proffered explanation is credible or whether it is a pretext to mask the alleged breach of a duty of good faith. This is especially true because the witnesses to the so-called random selection provided conflicting accounts regarding the method of selection employed.[10] It fol-

---

7. As a matter of national labor policy, arbitration is employed to promote stable labor relations, conserve sparse judicial resources and expedite the resolution of disputes. *See United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

8. This is especially true since it is unclear whether an adequate grievance procedure existed following the imposition of the trusteeship and at the time of Mekeel's termination. Pl.Mem.Exh. B, p. 156; *see Geddes v. Chrysler Corp.*, 608 F.2d 261, 264 (6th 1979) (quoting *N.L.R.B. v. Marine*

*Workers*, 391 U.S. 418, 428, 88 S.Ct. 1717, 1724, 20 L.Ed.2d 706 (1968)).

9. Local 501 argues that it cannot be held liable because, at the time of the layoff, Broder was not acting in his capacity as recording secretary of Local 501. However, Local 501's liability, if any, is premised upon it having actually caused the layoff by utilizing Broder in his capacity as a management representative for that purpose.

10. For example, the witnesses differed concerning preparation of the list, *see* Pltf.Mem.Exh. E, pp. 46, 51, Exh. F, p. 43, Exh. I, p. 151, the timing of the drawing, *id.* at Exh. E, p. 47, Exh. F, pp. 59–60, Exh. I, pp. 149–150, and the number of envelopes drawn, *id.* at Exh. E, pp. 49–50, Exh. I, p. 155.

lows that these claims cannot be properly resolved on a motion for summary judgment.

### C. Participation in the Breach of the Duty of Fair Representation

Plaintiffs also claim that Dynatram participated in IBEW's and Local 501's breach of their duties of fair representation by terminating Mekeel. In view of the facts set forth, the Court concludes that a rational juror could find collusion between IBEW, Local 501 and Dynatram. Thus, whether viewed as an independent cause of action or as a claim for apportionment of liability based upon Dynatram's participation in the Union's breach, a genuine issue of fact exists concerning Dynatram's liability in this matter. *See Vaca,* 386 U.S. at 197 n. 18, 87 S.Ct. at 920 n. 18; *Lewis,* 25 F.3d at 1145–46; *Jones,* 495 F.2d at 798–99. Accordingly, summary judgment is denied.

### CONCLUSION

In sum, the motions for summary judgment by IBEW, Local 501 and Dynatram are denied. The motion for summary judgment by Chapter is granted in part and denied in part.

It is **SO ORDERED.**