The STRATTON GROUP, LTD.,
Plaintiff,

v.

Gerald SPRAYREGEN, Herman Sprayregen, and Seymour Sprayregen, Defendants-Third-Party Plaintiffs,

v.

MARSHALL, BRATTER, GREENE, ALLISON & TUCKER, Third-Party Defendants.

No. 76 Civ. 373 (KTD).

United States District Court,
S. D. New York.

Oct. 31, 1978.

Orans, Elsen, Polstein & Naftalis, New York City, for The Stratton Group, Ltd.; Jerome T. Orans, Gary H. Greenberg, New York City, of counsel.

Aaron, Aaron, Schimberg & Hess, Chicago, Ill., for defendants Sprayregen; Joel J. Sprayregen, Chicago, Ill., of counsel.

Schwenke & Devine, New York City, for defendants Sprayregen; Michael C. Devine, New York City, local counsel.

Donovan, Leisure, Newton & Irvine, New York City, for third-party defendants; James A. Magee, Robert J. Siverd, New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

This is an action brought by the Stratton Group, Ltd., [hereinafter referred to as "Stratton"], against three officers and/or directors thereof, alleging violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, as well as claims of common law fraud, breach of fiduciary duty and breach of contract.

The facts relevant to this opinion are as follows:

In April of 1970 an agreement was executed between John's Bargain Stores, as predecessor of the Stratton Group,[1] and N.L.P. Fredi, Inc., [hereinafter referred to as "Fredi"], a newly formed subsidiary of the Stratton Group. Pursuant to said agreement, Fredi agreed to issue all of its common stock to Stratton and all of its preferred shares to the Sprayregen & Co., Inc. shareholders, among which was the defendant Gerald Sprayregen. These preferred shareholders were given the option to put all their shares, staggered over a three-year period, to Stratton. The total agreed consideration of $15,000,000 for the put was to be paid, according to the agreement, only from Stratton's "excess cash",[2] to be determined by the Stratton management and thereafter to be verified by independent accountants chosen by Stratton's directors.

In Stratton's original complaint it alleged, *inter alia*, the breach of the April 1970 Agreement. It was alleged that upon the issuance of the preferred shares and exercise of the put option, the Stratton management paid for said shares out of funds other than "excess cash" as defined in the Agreement and absent the requisite accountant's approval thereof. More particularly, however, plaintiff alleged, without further elaboration, that Gerald Sprayregen was personally liable for this breach. Upon defendant's motion, I dismissed this claim in an opinion filed January 24, 1978. I found plaintiff's failure to allege the basis of Gerald Sprayregen's contractual liability under the Agreement, to ensure payment only out of "excess cash" and upon an accountant's verification thereof, was a fatal defect.

Plaintiff has now amended its sixth claim and defendants again move to dismiss on the ground that the allegations still fail to state a claim upon which relief can be granted.

The standard for testing the sufficiency of a claim is well settled. Before a claim will be dismissed under Rule 12(b)(6) it must be demonstrated with certainty that on the strength of the pleadings plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. 2A J. Moore, Federal Practice ¶ 12.-08 at 2271–74 (3d ed. 1975). Accordingly, in determination of the instant motion under 12(b)(6), I am restricted to consideration of the lone pleading in this case—plaintiff's complaint.

The elements essential to pleading a breach of contract claim are:

(1) the making of an agreement;

(2) due performance by plaintiff;

(3) breach thereof by defendant; and

(4) causing damage to the plaintiff.

---

1. The Agreement in issue names John's Bargain Stores Corp., as the contracting party. Since it is the predecessor of the Stratton Group, however, I will hereinafter refer to the contracting party as Stratton—there being no distinction necessary for purposes of this motion.

2. Excess cash was limited therein to: ". . . monies available to John's (now Stratton) and obtainable by it from its cash, notes, checks, drafts, treasury bills or any other cash item or current assets readily transferable and convertible into cash in excess of funds required by John's for the operation of its business as it is presently conducted." Agreement ¶ 3.

*See, e. g., Marquardt-Glenn Corp. v. Lumelite Corp.,* 11 F.R.D. 175 (S.D.N.Y.1951). It is not required, however, that plaintiff attach a copy of the contract to the complaint thereby making it part of the pleadings.[3] *Id.*

It appears that plaintiff, solely on the strength of its complaint, now alleges the requisite elements. Indeed, they allege that Gerald Sprayregen as President, Chairman of the Board and Chairman of the Executive Committee of the Stratton Group, controlled and dominated Stratton when the Agreement was signed and when the alleged breach occurred. Complaint ¶ 51. Moreover, they allege that Gerald Sprayregen was "a party" to the April, 1970 Agreement. Complaint ¶ 8.

Defendants, however, have annexed a copy of the contract in issue to their opposition papers. While precluded from consideration of this evidence outside of the pleadings in determining a 12(b)(6) motion, I have, pursuant to Rule 12(b), elected to treat the instant motion to dismiss as one for summary judgment. Accordingly, I now consider the contract in issue.[4]

The essence of the alleged "breach" arises from Gerald Sprayregen's failure to pay the put shares from "excess cash" and obtain verification of said excess by independent accountants.

The contract provides in pertinent part:

AGREEMENT dated April 2, 1970, between JOHN'S BARGAIN STORES CORP., a New York corporation, having its principal place of business at 114 New South Road, Hicksville, New York ("John's"), and N.L.P. FREDI CORPORATION, a Delaware corporation, having

its principal place of business at 114 New South Road, Hicksville, New York ("Fredi") . . . .

. . . . .

3. (a) John's obligation to purchase Preferred Stock pursuant to paragraph 2 will be limited to monies available to John's and obtainable by it from its cash, notes, checks, drafts, treasury bills or any other cash item or current assets readily transferable and convertible into cash in excess of funds required by John's for the operation of its business as it is presently conducted ("Excess Cash") . . . .

Funds necessary to operate John's business shall be determined by management prior to January 31 of the years 1971 through 1974, inclusive. Such determination of Excess Cash shall require the written approval and verification of independent public accountants selected by the Board of Directors of John's.

Before defendant may be held accountable for the breach of a contract, it must be demonstrated that he was a party thereto. Clearly a breach can only occur when one is under an obligation to perform in the first instance. *See Republic Corporation v. Procedyne Corp.,* 401 F.Supp. 1061, 1068 (S.D.N.Y.1975).

It is apparent from the contract in issue that Gerald Sprayregen was not a named party to the Agreement. Therefore, as a matter of law, he cannot be held accountable for the alleged breach.[5]

The liabilities under the instant contract run, if at all, solely to the Stratton Board of Directors. It was not the obligation of

---

3. While under Rule 8 of the Federal Rules of Civil Procedure the above elements have been held sufficient to allege a claim for breach of a written contract, *Marquardt-Glenn Corp. v. Lumelite Corp., supra,* upon a 12(e) motion for a more definite statement Courts have compelled annexation of the contract to the complaint. *Id.* at 177. Moreover, once annexed to the complaint, the contract is a part thereof and may properly be considered upon a motion to dismiss. 2A J. Moore, Federal Practice, ¶ 8.17[6] at 1762 (3d ed. 1975).

4. It should be noted that while the parties were given an opportunity to hand up additional papers regarding the motion for summary judgment, they opted to stand on the strength of their prior submissions.

5. While it is true that plaintiff could arguably have sought to "pierce the corporate veil" in order to hold Gerald Sprayregen personally liable under the April 2nd Agreement, no such allegation was made nor could one reasonably be inferred from plaintiff's sixth claim as it now stands.

Gerald Sprayregen alone to pay for those shares put to Stratton out of "excess cash" and to obtain an accountant's verification of such excess. Rather, it was the obligation of the "board of directors" of Stratton, as the board of directors, to do so. Indeed, the agreement expressly required the board *qua* board to perform under the contract and any performance tendered by Gerald Sprayregen alone would be defective and itself constitute a breach of the contract.

Accordingly, construing defendant's motion as one for summary judgment it is granted as to plaintiff's sixth claim.

Settle judgment on five days' notice.