Ted **KOZERA**, Plaintiff,

v.

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, et al, Defendants.**

No. 92 CIV. 0058(RMB).

United States District Court, S.D. New York.

Aug. 27, 2002.

Wendy E. Sloan, Wendy E. Sloan, Esq., New York City, for Arthur Filardi, plaintiff.

Seymour M. Waldman, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for International Brotherhood of Electrical Workers, AFL–CIO, Local Union 501 of Electrical Workers, AFL–CIO, defendants.

Michael J. Hayes, Richard M. Resnick, Sherman, Dunn, Cohen, Leifer & Yellig, P.C., Washington, DC, for International Brotherhood of Electrical Workers, AFL–CIO, defendant.

Hanan B. Kolko, Mineola, NY, for Local Union 501 of Electrical Workers, AFL–CIO, defendant.

Joseph J. Steflik, Jr., Twining, Nemia & Steflik, Binghamton, NY, for Westchester-Fairchild Chapter of National Electrical Contractors Association, Inc., Briar Electric, Inc., defendants.

George L. Platt, New York City, for Dynatran, Division of Dyna Electric, defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BERMAN, District Judge.

### I. Introduction

This ruling, upon submission by both sides without a trial, resolves all open issues in this labor relations case. The Court concludes, upon the very unique procedural and substantive facts presented here, that there is merit to some of Plaintiff Ted Kozera's ("Kozera" or "Plaintiff") claims, although no basis exists for other than nominal damages.

On or about January 6, 1992, union members Plaintiffs Kozera, Richard M. Mekeel ("Mekeel") and Arthur Filardi ("Filardi") (collectively, "Plaintiffs") commenced this action pursuant to the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 461 *et seq.*, against, among others, the International Brotherhood of Electrical Workers ("IBEW"), Local 501 of the IBEW ("Local 501"), and the Westchester Fairfield Chapter of the National Electrical Contractors Association, Inc. ("NECA Chapter") (collectively, "Defendants").[1] As members of Local 501, Plaintiffs complained of alleged labor/management infractions, including *inter alia,* that a trusteeship was improperly imposed and maintained upon their local union to suppress a purportedly "uncooperative" faction of union members including Plaintiffs. *See* Third Amended Complaint, filed October 23, 1992 ("Third Amended Complaint") ¶ 1. The parties have waived a trial and requested the Court to render its findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 52(a), based upon the (voluminous) record, which includes, without limitation the Second Amended Consolidated Joint Pretrial Order submitted January 5, 2001 ("Pretrial Order"), and the Third Amended Complaint. *See* Transcript of

---

1. The action was filed before United States District Judge John E. Sprizzo and was reassigned to this Court on or about December 9, 1998. Plaintiffs were initially represented by Wendy E. Sloan, Esq. On December 11, 1995, Judge Sprizzo "so ordered" Plaintiffs' motion to substitute Robert K. Mekeel, Esq. as counsel. By letter, dated July 17, 1999, Kozera advised the Court that he was no longer represented by Robert K. Mekeel, but was proceeding *pro se.* Mekeel and Defendants reached a settlement on January 29, 2001. Filardi has not appeared or participated in the case (at least) since it was assigned to this Court and is considered to have abandoned any claim(s). *See Merker v. Rice,* 649 F.2d 171, 173 (2d Cir.1981) ("dismissal for want of prosecution is a matter committed to the discretion of the trial judge.").

Conference held before the Court May 11, 2001, at 2–3.

Plaintiff Kozera contends in the Pretrial Order that he has five (remaining) claims as follows:

(1) the IBEW Constitution, Article IV, § 3(9) (last sentence [2]) restricts the right to sue, to free speech and assembly in violation of Title I of the LMRDA, 29 U.S.C. § 411(a)(2), (4) ("Article IV, § 3(9) claim"); ("It has no purpose, actually, even being in there, other than to intimidate the membership and chill any dissidents.");

(2) the IBEW imposed and maintained a trusteeship of Local 501 starting July 5, 1991 and ending in June 1992 ("Trusteeship"), to suppress Plaintiff's right to sue and to free speech and assembly in violation of Title I of the LMRDA, 29 U.S.C. § 411(a)(2), (4) ("Trusteeship claim");

(3) the IBEW breached the IBEW Constitution and the (then) existing (1989–92) collective bargaining agreement ("1989–92 CBA") by implementing a revised collective bargaining agreement ("Revised 1989–92 CBA") between the NECA Chapter and Local 501, containing an unapproved small work agreement ("Small Work Agreement") in violation of Section 301 of the LMRA ("Section 301"), 29 U.S.C. § 185 ("Small Work Agreement claim against IBEW");

(4) the NECA Chapter breached the 1989–92 CBA by implementing the Revised 1989–92 CBA containing the unapproved Small Work Agreement, in violation of Section 301 ("Small Work Agreement claim against the NECA Chapter"); and

(5) the IBEW, the NECA Chapter, and Local 501 and its successors implemented the Pavillion Project Agreement in 1993, without approval and without ratification of members of Local 501, contrary to the IBEW Constitution, the 1989–92 CBA, and Title I of the LMRDA, 29 U.S.C. § 411(a)(1) ("Pavillion Project claim").[3]

Pretrial Order, at p. 1 ¶¶ 1(1)-(5).

Defendants contend, *inter alia,* that: (1) Kozera lacks standing with respect to his Article IV, § 3(9) and Small Work Agreement claims; (2) Article IV, § 3(9) does not interfere with a protected right and, assuming *arguendo* that it did, it is a reasonable rule under LMRDA § 101(a)(2); (3) the Trusteeship claim has already been dismissed by this Court's Order, dated January 27, 2000; (4) the Small Work Agreement did not breach the IBEW Constitution or the 1989–92 CBA; (5) the Small Work Agreement claims against the IBEW and the NECA Chapter fail because Kozera does not assert or seek (money) damages; and (6) the Pavillion Project claim is not properly before the Court because, among other things, it was mentioned for the first time in the Second Amended Consolidated Joint Pretrial Order and is not included in the Third Amended Complaint. *Id.*

For the reasons set forth below, the Court enters judgment: (1) in favor of the

---

**2.** The last sentence states: "The I.P. [International President] may suspend any local officer or member who offers interference in such [trusteeship] cases." IBEW Constitution, Article IV, § 3(9).

**3.** While the court has taken care liberally to construe Plaintiff's claims, *see Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994) (A *pro se* party's papers should be read liberally and interpreted "to raise the strongest arguments that they suggest."), "[i]t is an established procedural principle that a party's failure to include a legal theory or defense in the pretrial order results in its subsequent abandonment or waiver." *Katt v. City of New York,* 151 F.Supp.2d 313, 346 (S.D.N.Y.2001) (quoting *Colli v. Wirth,* 1996 WL 442835, at *1 (S.D.N.Y. Aug. 6, 1996)).

IBEW on Plaintiff's Article IV, § 3(9) and Trusteeship claims; (2) in favor of Plaintiff and against the IBEW and the NECA Chapter on Plaintiff's Small Work Agreement claims; and (3) in favor of the IBEW, the NECA Chapter, and Local 501 on Plaintiff's Pavillion Project claim.

Pursuant to Fed.R.Civ.P. 52(a), the Court's findings of fact and conclusions of law follow.

## II. Findings of Fact

1. The IBEW is a labor organization of electrical workers in the United States and Canada with its headquarters in Washington, D.C. Stip. Facts ¶ 2.[4]

2. Ted Kozera was a journeyman electrician and member of Local 501; Local 501 was merged into IBEW Local 3 on August 1, 1993. *Id.* ¶¶ 1–3. Both Local 3 and Local 501 were subordinate, chartered and affiliated bodies of the IBEW. *Id.* ¶ 3.

3. The NECA Chapter was an employer association that represented various electrical contractors in the construction industry in Westchester County, New York and Fairfield County, Connecticut for collective bargaining purposes until 1993, when it discontinued its operations.[5] *Id.* ¶ 4.

4. The IBEW Constitution is the governing document for the IBEW and for all IBEW local unions. *Id.* ¶ 5.

5. The instant litigation is a sequel to *Kozera v. Westchester Fairfield Chapter of Nat'l Elec. Contractors Ass'n Inc.* ("*Kozera I*"). *Kozera I*, filed by Plaintiff and other Local 501 members, involved a challenge to Local 501's implementation of a Residential Agreement and a Small Work Agreement (for the period 1986–89) allegedly without ratification by the Local 501 membership. *See Kozera I*, 714 F.Supp. 644, 646 (S.D.N.Y.1989), *rev'd in part and vacated in part*, 909 F.2d 48 (2d Cir.1990). On May 30, 1989, in *Kozera I*, Judge Sprizzo held, among other things: (1) that the 1986–89 Residential and Small Work Agreements were unenforceable because, absent ratification, Local 501 officers lacked authority to execute those agreements; (2) the NECA Chapter violated the 1986–89 Collective Bargaining Agreement ("1986–89 CBA") by implementing the unauthorized 1986–89 Residential and Small Work Agreements; and (3) Local 501 did not breach its duty of fair representation.[6] *Kozera I*, 714 F.Supp. 644. On appeal, the United States Court of Appeals for the Second Circuit found that: (1) both the Residential and Small Work Agreements were enforceable without ratification by the Local 501 membership; (2) the NECA Chapter, relying on the authority of Local 501 officials to execute the Residential and Small Work Agreements, did not breach the 1986–89 CBA by implementing the Residential and Small Work Agreements; and (3) the issue of whether Local 501 breached its duty of fair representation required further review by the trial court. *Kozera*, 909 F.2d 48 ("Because the [NECA] Chapter had no reason to doubt the authority of union officers to [sign the agreements pursuant to] an arbitration order, we think that both [agreements] are binding ...."). On

---

4. References to "Stip. Facts" are to the stipulated facts contained in the Pretrial Order.

5. *See infra* n. 16.

6. The Small Work Agreement governed "light" commercial (electrical) work and the

Residential Agreement governed residential (electrical) work. Affirmation of Wendy Sloan, dated July 12, 1993 ("1993 Sloan Aff."), Ex. 3.

remand, Judge Sprizzo found that Local 501 did not breach its duty of fair representation. *See Kozera v. Int'l Broth. of Elec. Workers, AFL–CIO,* 892 F.Supp. 536, 541 (S.D.N.Y.1995).

6. In 1988, the IBEW received various complaints about Local 501 (*see* 1993 Sloan Aff., Ex. 14 ("the Local Union still refuses to recognize [the] policy [of foreman call-out by name] and has told employers that they don't, continuously rebutting any cooperation with the employers as well as with their own International")), from contractors and Local 501 members; International Representative Ed Hill ("Hill") was assigned by International President J.J. Barry ("Barry") to investigate the complaints.[7] Stip. Facts ¶ 8.

7. In January 1989, while *Kozera I* was pending, Hill recommended to the IBEW that a (show cause) hearing be held, *id.* ¶ 12, and that Local 501 be placed under International Charge pursuant to Article IV, § 3(9).[8] Affidavit of Michael J. Hayes, dated April 7, 1993 ("Hayes Aff."), Ex. 16. Hill's recommendation cited, among other things, "the filing of the lawsuits

against the contractors" and the "hostile mood" pervading Local 501. *Id.; see* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, dated July 12, 1993 ("Pls.' S.J. Opp. Mem."), at 4 ("Kozera I was the impetus to IBEW's Trusteeship."). The IBEW did not conduct a hearing at that time.

8. The 1986–89 CBA expired in May 1989 and the NECA Chapter and Local 501 negotiated and signed the 1989–92 CBA. Stip. Facts ¶¶ 14–15. The 1989–92 CBA contained an Inside Agreement and a Residential Agreement which provided for annual incremental wage increases. *Id.* ¶ 15.

9. On March 29, 1991, Barry authorized International Vice–President Donald Funk ("Funk") to hold a (show cause) hearing to determine if some or all of eleven charges against Local 501 provided sufficient cause to take charge of Local 501's affairs pursuant to IBEW Constitution, Article IV, § 3(9).[9] *Id.* ¶ 19. On April 11, 1991, Funk sent Local 501 a written notice of hearing, including a description of the eleven charges and the text of Article IV,

---

7. Article IV, § 4 of the IBEW Constitution provides: "The I.P. can, in any situation, delegate the powers of his office to an International Representative, Vice President or Assistant." Stip. Facts ¶ 6.

8. Article IV, § 3(9) provides in part: "The I.P. is empowered ... [t]o take charge of the affairs of any L.U. [local union] when in his judgment such is necessary to protect or advance the interests of its members and the IBEW ...." IBEW Constitution, Article IV, § 3(9).

9. The IBEW charged that Local 501:(1) "failed to implement an effective training program for the residential unit ... (2) ... ha[d] the inside unit vote on issues related to the current residential agreement ... (3) ... failed to participate in the IBEW organizing effort for construction of local unions ... (4)

... operates a referral procedure that is not consistent with the standard referral ... (5) ... [maintains] dues collection procedures, as well as the bookkeeping system, [with] a number of irregularities ... (6) ... has within its structure a group known as a 'Trade Board' ... (7) ... has an adversarial relationship[s] with employers ...," (8) contributed to the problem of fringe benefit fund delinquencies by failing to take action against delinquent contractors; (9) "because of its refusal to enforce the agreement, has created an atmosphere that has resulted in a contractor severing its relationship with [the NECA Chapter]," (10) refused to comply with decisions of the Council on Industrial Relations; and (11) refused to comply with a contractor's request that a particular Local 501 member be assigned as a foreman on a project, in violation of the General Presidents Project Maintenance Agreement. Hayes Aff., Ex. 29.

§ 3(9). *Id.* ¶ 20; Hayes Aff., Ex. 29 (Any member has "the right ... to appear at the hearing to give testimony or present other evidence in support of or in opposition to the International Charge.").

10. The show cause hearing commenced on Wednesday, May 8, 1991 and concluded on May 16, 1991. Stip. Facts ¶ 22. Hill presented the IBEW's case in two days and submitted 98 exhibits. *Id.* ¶ 25; *see* affidavit of Hill, dated March 20, 1992 ("1992 Hill Aff."), ¶ 8. George Horrigan, Local 501's Business Manager, presented Local 501's defense in three and a half days and submitted 72 exhibits. *Id.; see* Hayes Aff., Ex. 40. Among others, several NECA Chapter contractors, the NECA Chapter Executive Director, Bruce DeShay ("DeShay"), and twelve Local 501 members testified. Affidavit of Hill, dated April 5, 1993, ¶ 8 (twenty-eight Local 501 members signed up to testify, but some "declined to testify when their turn came"). Kozera did not testify at the hearing, (Stip. Facts ¶ 23), and appears not to have assisted Local 501's officers in preparing a defense to the charges. *Id.* ¶ 24.

11. On May 23, 1991, Funk recommended to Barry that Local 501 be placed under International Charge. *Id.* ¶ 27; Hayes Aff., Ex. 40.

12. On or about July 1, 1991, Barry sustained nine of the eleven charges and placed Local 501 under International Charge, effective July 5, 1991. Stip. Facts ¶¶ 30, 31; 1992 Hill Aff., Ex. 3, p. 30 ("I have sustained Charges Nos. 2, 3, 4, 5, 6, 7, 8, 10 and 11 against Local 501.")

13. Pursuant to the IBEW Constitution, Article IV, § 4, Barry authorized Vice President Funk to take charge of the affairs of Local Union 501 under the Trusteeship. Stip. Facts ¶ 31. Vice President Funk assigned Hill and David Sager ("Sager") to represent him as trustees (collectively, "Trustees") in administering the affairs of Local Union 501. *Id.*

14. In July 1991, DeShay contacted Hill to discuss the NECA Chapter's proposal to amend the 1989–92 CBA, Affidavit of Deshay, dated April 7, 1993, ¶¶ 19–20, and informed Hill that the NECA Chapter and Local 501 discussed the proposed amendment at a June 3, 1991 Joint Labor–Management Committee meeting. *Id.* At the June 3, 1991 meeting, the NECA Chapter requested that, due to economic conditions and lack of work, Local 501 reconsider a wage increase scheduled for July 27, 1991. Stip. Facts ¶ 28.

15. Article 1, § 1.03 of the 1989–92 CBA provides: "Any ... change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW and the National Office of NECA for approval, the same as this Agreement." *Id.* ¶ 15.

16. On July 24, 1991, the Trustees and the NECA Chapter negotiated a Memorandum of Understanding to revise the 1989–92 CBA by deferring the wage increase scheduled to take effect on July 27, 1991 for one year and extending the 1989–92 CBA for one additional year. *Id.* ¶ 33. On August 16, 1991, International President Barry stamped the Memorandum of Understanding "APPROVED." Hayes Aff., Ex. 47.

17. In August and September 1991, Kozera and Mekeel circulated a petition challenging the actions referred to in ¶ 16 above by the Trustees. *Id.* ¶ 35; 1993 Sloan Aff., Ex. 18 ("[W]e have

been denied the right of ratification, and our negotiated wage increase.... Four Rank–and–File Local 501 members are going to Federal Court to put a stop to this collusion.").

18. On January 20, 1992, after further negotiations with the NECA Chapter, the Trustees submitted a Revised 1989–92 CBA to International President Barry, containing the wage deferral and extension amendments negotiated on July 24, 1991, and a Small Work Agreement.[10] Stip. Facts ¶ 36; 1993 Sloan Aff., Ex. 3.

19. The IBEW Constitution, Article XVII, § 6 provides in part:

... All bylaws, amendments and rules, all agreements, jurisdiction, etc. of any kind or nature, shall be submitted in duplicate form to the I.P. for approval.... No. L.U. [local union] shall put into effect any bylaw, amendment, rule or agreement of any kind without first securing such approval....

Article IV, § 3(13) of the IBEW Constitution provides:

The I.P. or his representatives shall not enter into agreements affecting wages, hours and conditions of employment where local union agreement, covering such employment already exists, without first notifying at least thirty (30) days in advance of such agreements, the local unions so concerned or affected, in a district, and then only by procuring consent of a majority of the local unions in the district or the individual local union affected by this agreement.

20. On March 19, 1992, IBEW Referral Officer, W. Dennard Gore issued a letter to "all inside journeymen and apprentices" advising them how to apply for work under the Small Work Agreement. 1993 Sloan Aff., Ex. 32; Defendants' Contentions of Disputed Facts ¶ 15 ("In or about April 1992, during the term of the Trusteeship, the Trustee[s] and [the NECA] Chapter put into effect the small work agreement.").

21. On March 20, 1992, Barry approved the Revised 1989–92 CBA, but not the Small Work Agreement which, in fact, he stamped "NOT APPROVED." 1993 Sloan Aff., Ex. 3, Letter from Barry to Hill, dated March 20, 1992 ("Barry Letter") ("Approval of Article VIII, Small Work, is being withheld pending further investigation of its implementation. It is suggested by this office, that if the parties wish to do this type of work, that they negotiate a separate agreement that could stand on its own.... The agreement has been approved, with the exception of Article VIII ...."). Barry did not later approve this Small Work Agreement.[11]

22. At a meeting held April 8, 1992 of the Inside Joint Labor–Management Committee, NECA Chapter members and the Trustees discussed the Barry Letter. 1993 Sloan Aff., Ex. 11.

23. The IBEW's Trusteeship over Local 501 was terminated in June 1992. Stip. Facts ¶ 44.

24. Local 501 and the NECA Chapter continued the Small Work Agreement implemented during the Trusteeship until September 1992. See Defendants' Contentions of Disputed Facts ¶ 18. Thereafter, the NECA Chapter and Local 501 negotiated a(new) Small Work Agreement which was

---

**10.** The Small Work Agreement governed "light" commercial (electrical) work such as work at fast food restaurants and small strip malls. See 1992 Hill Aff., ¶ 22(e).

**11.** There is no indication in the record whether the National Office of NECA did or did not approve the Small Work Agreement (and the parties do not appear to raise this issue).

ratified by the membership of Local 501 in September 1992, and approved by International President Barry on October 27, 1992. Stip. Facts ¶ 41.

25. Kozera has not been "suspended" by the Defendants (or otherwise disciplined) and "Kozera does not seek any money damages in this case." *Id.* ¶ 45; Transcript of Conference held before the Court January 5, 2001, at 4 ("Mr. Kozera has stated on numerous occasions that he was not interested in damages in this case."). Kozera has advised the Court on many occasions that he is not seeking damages.

## III. Conclusions of Law

### *Jurisdiction and Venue*

1. This Court has subject matter jurisdiction pursuant to § 301(a) of the LMRA and §§ 102 and 304 of the LMRDA. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. Pretrial Order at p. 3, ¶ 2(1).

### *Burden of Proof*

2. Plaintiff has the burden to prove his case by a preponderance of the evidence, including any violation of the LMRDA and the LMRA. *See Farkas v. Rumore,* 881 F.Supp. 884, 889 (S.D.N.Y.1995); *James v. Kay,* No. 88 Civ. 0126, 1993 WL 228083 (S.D.N.Y. June 23, 1993) (LMRDA); *General Warehousemen's Union Local 852 v. Reliance Electric Company,* 386 F.Supp. 1303, 1307 (S.D.N.Y. 1973) (LMRA).

### *Article IV § 3(9) claim*

3. Judge Sprizzo has ruled upon the IBEW's contention that Plaintiff lacks standing to maintain his Article IV, § 3(9) claim, and held that "IBEW is not entitled to summary judgment on [the] Title I claims." *Kozera,* 892 F.Supp. at 543–44.

4. To determine whether the last sentence of Article IV, § 3(9) impermissibly restricts a union member's right to free speech and assembly in violation of § 101(a)(2), "we first consider whether the rule interferes with an interest protected by the first part of § 101(a)(2). If it does, we then determine whether the rule is 'reasonable' and thus sheltered by the proviso to § 101(a)(2)." *United Steelworkers of America, AFL–CIO/CLC v. Sadlowski,* 457 U.S. 102, 111, 102 S.Ct. 2339, 72 L.Ed.2d 707 (1982). "In conducting these inquiries, we find guidance in the policies that underlie the LMRDA in general and Title I in particular." *Id.* "The critical question is whether a rule that partially interferes with a protected interest is nevertheless reasonably related to the protection of the organization as an institution." *Id.* at 111–12, 102 S.Ct. 2339. There is no Article IV, § 3(9) violation here.

5. "Congress adopted the freedom of speech and assembly provision in order to promote union democracy. It recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal." *Id.* (citations omitted).

6. International President Barry has "always interpreted" the last sentence of Article IV, § 3(9) to apply only to "physical resistance to a trusteeship such as refusing to allow a trustee to enter the premises, or ... physically assaulting a trustee." Supplemental Affidavit of J.J. Barry, dated April 15, 1999, at ¶¶ 9, 10 (International President Barry "never invoked the last sentence of [Article IV, § 3(9) ] against [Kozera or Mekeel]" and "has never

invoked the last sentence ... against anyone."). This interpretation is supported by the enforcement history of the provision. "Since 1959, there have been only two instances in which officers or members have been disciplined pursuant to Article IV, § 3(9). In one case, a business manager was expelled for shooting the trustee; in the other, a local's officers were disciplined when they refused to permit the trustee to come into the local union." IBEW's Memorandum in Support of its Motion for Summary Judgment, dated April 9, 1993 ("IBEW's S.J. Mem."), at 24; *see* Hayes Aff., Exs. 36–37.

7. Plaintiff's contention that the last sentence of Article IV, § 3(9) has been used in a manner inconsistent with the interpretation proffered by Barry and the IBEW is unpersuasive. Local 501 members voiced criticism of and litigated against the IBEW both before and during the Trusteeship. Plaintiff has not shown by a preponderance of evidence that he or any members or officers of local unions within IBEW were "suspended" under Article IV, § 3(9); nor has he demonstrated that the last sentence was applied in other than cases involving "physical resistance" to trusteeships. *See* Transcript of Conference held before the Court January 5, 2001, at 7–8; Materials submitted by Kozera relating to Local 136.[12]

8. Assuming *arguendo* that the last sentence of Article IV, § 3(9) implicated rights protected by § 101(a)(2), "a member's right of free speech is subject to reasonable regulations aimed at preventing the disruption of union business." *Petramale v. Local No. 17,* 736 F.2d 13, 17 (2d Cir.1984); *see Franza v. Teamsters,* 869 F.2d 41, 47 (2d Cir.1989) ("[T]he institutional interest in union self-governance—– free of undue government oversight or interference—– sometimes outweighs the free speech rights of union members."). "A Court should be exceedingly reluctant to substitute its judgment for that of union officials in the interpretation of the union's constitution, and should interfere only where the official interpretation is unfair or unreasonable." *Schonfeld v. Raftery,* 359 F.Supp. 380, 388 (S.D.N.Y.1973). The last sentence of Article IV, § 3(9) is aimed at preventing the interference of a trusteeship, which itself is "a drastic action undertaken by an International in an attempt to control and rectify serious problems at the local level." *Maher v. Int'l Broth. of Elec. Workers,* 15 F.3d 711, 714 (7th Cir. 1994).[13]

---

**12.** Kozera contends that Hill and Sager accused Local 501's Business Manager Dennis Murphy ("Murphy") of "interfering" with the Trusteeship by "influencing [a contractor's] vote [against the Small Work Agreement]," Kozera Affirmation, dated July 8, 1993, ¶ 76, but there is no indication that they did more than advise Murphy that if they "determined that he or his assistants were interfering, [they] would take action against them." 1993 Sloan Aff., Ex. 2.

**13.** *See,* in this connection, *Barbour v. Sheet Metal Workers,* 401 F.2d 152, 157 (6th Cir.

1968) (court reversed judgment of district court which ordered reinstatement of plaintiff to union membership because "[t]he emphasis [of the local union's Trial Board] was on Barbour's interference with the operation of the local and the trusteeship imposed by the parent international."); *Mechanics Educational Society of America v. Mechanics Educational Society of America, Local 6 R,* No. 91–CV–1040, 1991 WL 217671 (N.D.N.Y. Oct. 18, 1991) (granting plaintiffs' motion for a preliminary injunction to enjoin defendants from interfering with the administration of the trusteeship).

9. The last sentence of Article IV, § 3(9) tracks the "interference" language used by Congress in § 101(a)(2). *See* 29 U.S.C. § 411(a)(2) ("nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations."); *see Marquez v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46, 119 S.Ct. 292, 142 L.Ed.2d 242 (1998) (A clause that tracks the National Labor Relations Act, 29 U.S.C. § 158(a)(3) can be enforced as written "because by tracking the statutory language, the clause incorporates all of the refinements that have become associated with that language."); *see also Vestal v. Hoffa,* 451 F.2d 706 (6th Cir.1971); *Gurton v. Arons,* 339 F.2d 371, 375 (2d Cir.1964) ("The provisions of the L.M.R.D.A. were not intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions.").

10. The last sentence of Article IV, § 3(9), similarly, does not appear to restrict a union member's right to sue in violation of § 101(a)(4). *See* Pls.' S.J. Opp. Mem. at 38 ("threats to remove union officers for expressing critical views ('interfering')" "chill[ed] the] exercise of protected rights"). Plaintiff has not presented (sufficient) evidence to support this claim. *See Greenberg v. Federal Deposit Insurance Corp.,* No. 89 Civ. 0601(LBS), 1992 WL 245513, at *6 (S.D.N.Y. Sept. 15, 1992) ("Mere conclusory allegations and assertions will not suffice.").

*Trusteeship claim*

11. In its January 27, 2000 Order, this Court (has already) determined that Plaintiffs' claims "for injunctive and declaratory relief regarding the trusteeship are dismissed as moot." Order, dated January 27, 2000, at 3 ("Courts 'have held that once a trusteeship has been lifted, questions regarding the validity of the purposes for which the trusteeship was imposed or maintained are moot.'") (citing *Thompson v. Office and Professional Employees Int'l Union, AFL–CIO,* 74 F.3d 1492, 1503 (6th Cir.), *cert. denied,* 519 U.S. 993, 117 S.Ct. 482, 136 L.Ed.2d 376 (1996)). Thus, there is no validity to Plaintiff's Trusteeship claim.

*Small Work Agreement claim against IBEW*

12. "[B]ased upon Judge Sprizzo's Opinion, [dated July 11, 1995,] as well as the fact that Defendants had adequate notice and an opportunity to be heard, [Defendants'] contention that Plaintiff [does not] have standing to maintain claims regarding the Small Work Agreement is rejected." Order, dated January 27, 2000, at 6.

13. "Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body ...." 29 U.S.C. § 462.

14. The IBEW Constitution and the 1989–92 CBA are "contract[s] between labor organizations" within the terms of Section 301(a). *See Santos v. District Council of New York City and Vicinity of United Broth. of Carpenters and Joiners of America,*

*AFL–CIO,* 547 F.2d 197, 199 n. 1 (2d Cir.1977); *Drywall Tapers and Pointers of Greater New York, Local 1974 v. Operative Plasterers' and Cement Masons' Int'l Association,* 537 F.2d 669, 672–73 (2d Cir.1976). Kozera, an "[a]ffected individual employee[ ]," "may sue for violation of such contracts." *Santos,* 547 F.2d at 199, 200 nn. 1, 3.

15. Article XVII, § 6 of the IBEW Constitution provides that all amendments and agreements "shall be submitted" to the International President for approval and "[n]o L.U. shall put into effect" any amendment or agreement without such approval. Similarly, Article 1, § 1.03 of the 1989–92 CBA between the NECA Chapter and Local 501 requires such approval ("Any such change ... agreed upon shall be ... submitted to the International Office of the IBEW and the National Office of NECA for approval ..."). Barry did not approve the Small Work Agreement.[14] *See* 1993 Sloan Aff., Ex. 3, Barry Letter ("Approval of Article VIII, Small Work, is being withheld ..."). Notwithstanding the lack of approval by the IBEW, from about April 1992 through the term of the Trusteeship, the Trustees and the NECA Chapter implemented the Small Work Agreement. *See* Defendants' Contentions of Disputed Facts ¶ 15.

16. Barry stated that in withholding his approval he "did not disapprove the agreement between the NECA Chapter and the trustees regarding small work, or intend to prevent its implementation," but rather "wanted to know more about how the agreement worked in practice before [he] finally approved it," Affidavit of Barry, dated April 5, 1993, ¶ 9. But the fact is that Barry never approved the Small Work Agreement. *See* Findings of Fact ¶¶ 21, 24.

17. Thus, Kozera has proven by a preponderance of the evidence the technical elements of his third claim, (*see* p. 2), i.e. that the IBEW breached the IBEW Constitution and the 1989–92 CBA. *See Stratton Group, Ltd. v. Sprayregen,* 458 F.Supp. 1216, 1217 (S.D.N.Y.1978).

18. While Defendants correctly point out that Kozera seeks no damages for this claim, *see* Pretrial Order at 25, ¶ 8(5), the Court finds that the remedy of nominal damages is appropriate here. *See Weeks v. Local 1199,* 892 F.Supp. 568, 574 (S.D.N.Y.1995) (awarding nominal damages to plaintiff for defendant's breach of union constitution where plaintiffs "failed to offer any factual evidence demonstrating that they have suffered actual damages"), *aff'd in relevant part, Ascenio v. Local 1199,* 101 F.3d 684 (2d Cir.1996). "It is a well settled tenet of contract law that even if the breach of contract caused no loss ... the injured party is entitled to recover as nominal damages a small sum fixed without regard to the amount of the loss, if any." *Mermaid Neptune Devp't Corp. v. Home Owners Warranty Corp.,* No. 85 Civ. 6318, 1988 WL 45653, at *4 (S.D.N.Y. May 4, 1988) (citations omitted). Plaintiff is entitled to nominal damages against the IBEW for $2.00, i.e., $1.00 for breach of the IBEW Constitution and $1.00 for breach of the 1989–92 CBA. *Weeks,* 892 F.Supp. at 574 ("[A]s Plaintiffs are unable to prove any legally cognizable damages stemming from the breach, they are limited to

---

**14.** *See also supra* n. 11.

an award of nominal damages in the amount of $1.00 each.").

19. Plaintiff has not proven by a preponderance of the evidence his claim that the IBEW breached Article IV, § 3(13) of the IBEW Constitution ("The I.P. . . . shall not enter into agreements" without the "consent of . . . the individual local union."). While it is not disputed that the Small Work Agreement was an agreement affecting wages, hours and conditions of employment under Article IV, § 3(13), and that the Small Work Agreement was not submitted to a vote by Local Union 501 before its implementation from April 1992 through September 1992, there is applicable precedent that local union approval is not required during a trusteeship. *See Maher v. Int'l Broth. of Elec. Workers,* No. 90 C 6502, 1993 WL 57553 (N.D.Ill. Mar. 4, 1993).

20. Plaintiff's argument with respect to this claim was raised and rejected in *Maher,* 1993 WL 57553, where the court found that International President Barry's interpretation that Article IV, § 3(13) does not apply during a trusteeship was reasonable. *Id.* at *8 ("It would be inconsistent with the purpose of a trusteeship if local unions and their members had to pass on the reforms instituted by the trustees.").

21. In *Maher,* as here, International President Barry interpreted Article IV, § 3(13) to be inapplicable during a trusteeship. *Id.* at *7–8. The Maher Court agreed: "Article IV § 3(13) of the International's constitution does not apply to agreements adopted during a trusteeship. Under Article IV § 3(2), the International President possesses the authority '[t]o decide all questions of law, dispute or questions in controversy however arising . . . .' " *Id.* at *8. The Maher Court further found that "[t]he International President's determination is consistent with the purpose of a trusteeship," and that "plaintiffs' is not," and that "[t]he court is not prepared to call the union's interpretation of its constitution unreasonable." *Id.* at *8–9 ("It makes little sense for trustees to suspend a local's rules and assume control of a local if at every attempt to reform the local structure, the trustees have to submit their reforms to a body that they contend is at odds with the International's objectives.").

### Small Agreement Work claim against the NECA Chapter

22. The NECA Chapter's argument that Plaintiff lacks standing is rejected for the reasons stated above, *supra* ¶ 12.

23. The NECA Chapter, like IBEW, appears technically to have breached the 1989–92 CBA by implementing the Small Work Agreement without approval of Barry.[15] While the legal status of the NECA Chapter in these proceedings is somewhat uncertain, Kozera would be entitled to nominal damages against the NECA Chapter.[16] The Court awards nominal damages of $1.00 against the NECA Chapter (or its successor, if any) for breach of the 1989–92 CBA.

**15.** *See also supra* n. 11 and n. 14.

**16.** *See* letter to the Court, dated November 22, 1994, from Joseph J. Steflik, Jr., Esq., attorney for the NECA Chapter ("It was my understanding from previous conferences that the Westchester–Fairfield Chapter of NECA, . . . was to be dismissed from the lawsuit."). However, Defendants have not pressed this position in the Pretrial Order.

### Pavillion Project claim

24. This Pavillion Project claim was not included in the Third Amended Complaint nor in the (two) prior joint pretrial orders submitted to the Court in April 1996 and in August 2000, and it was not briefed in any of the dispositive motions in this case. The facts relating to the Pavillion Project claim arose from November 1993 through at least October 1995, i.e., after Plaintiffs filed their Third Amended Complaint and after Defendants' motions for summary judgment were fully briefed and argued. *See* Pretrial Order at p. 16, ¶¶ 42–46. "A motion to plead events that have transpired *since* the date of the party's most recent pleading 'is technically categorized under Fed. R.Civ.P. 15(d) ['Supplemental Pleadings'] as opposed to Rule 15(a) ['Amendments'].'" *Weeks v. New York State (Division of Parole)*, 273 F.3d 76 (2d Cir.2001) (quoting *Flaherty v. Lang*, 199 F.3d 607, 613 n. 3 (2d Cir. 1999)). "Undue delay and futility of the amendment, among other factors, are reasons to deny leave." *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir.1995) (quoting *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994)).

25. Plaintiff has never moved to supplement the Third Amended Complaint to assert this claim. *See Weeks*, 273 F.3d at 88 ("Although it appears that the court was aware for some time that Weeks had been fired and that this development might precipitate a new claim, it cannot be expected that the court would entertain the issue *sua sponte*."). The (belated) prosecution of this issue would be prejudicial and would entail, among other things, additional discovery and briefing. *See, e.g., Weeks*, 273 F.3d at 88 (denying motion to amend filed the week before trial stating that "the granting of the motion would potentially have entailed an amended pre-trial order, additional documents and additional witnesses (with any associated evidentiary issues), additional briefing ...."). Thus, the Pavillion Project claim is dismissed.

## IV. Conclusion and Order

For the foregoing reasons, the Court finds: (1) in favor of the IBEW on Plaintiff's Article IV, § 3(9) and Trusteeship claims; (2) in favor of Plaintiff and against the IBEW and the NECA Chapter on Plaintiff's Small Work Agreement claims; and (3) in favor of the IBEW, the NECA Chapter, and Local 501 on Plaintiff's Pavillion Project claim. The Clerk of the Court is respectfully requested to enter judgment in favor of the Plaintiff against IBEW in the (nominal) amount of $2.00 and in favor of Plaintiff and against the NECA Chapter in the (nominal) amount of $1.00, in accordance with the findings of fact and conclusions of law.[17] Thereafter, the Clerk is respectfully requested to close this case.

---

17. *See Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 892 (2d Cir.1988) ("nominal damages are limited to sums that are de minimis, most commonly $1"); *see also Weeks*, 892 F.Supp. at 574; *Mermaid Neptune Devp't Corp.*, 1988 WL 45653, at *4.